# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TYRONE DAVIS SMITH,

    Plaintiff,

    v.                                                       Case No. 07-CV-823

JOHN HUSZ, TROY HERMANS, MS. BASTEN,
MR. KOREMENOS, OFFICER COOK, OFFICER HANDY,
SGT. TREMINS, SGT. WIGGINS, OFFICER KHAN,
MILWAUKEE SECURE DETENTION FACILITY,
AND RICK RAEMISCH,

    Defendants.

## DECISION AND ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

The plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. He is proceeding on retaliation and conspiracy claims based on allegations set forth in the January 24, 2008 amended complaint. Before the court are the plaintiff's motion for summary judgment, the defendants' cross-motion for summary judgment, and the plaintiff's motion to consolidate. All of these motions will be addressed herein.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned to the Honorable Charles N. Clevert, Jr., according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). During the initial processing of the case, the parties consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C.

§ 636(c) and General Local Rule 73.1 (E.D. Wis.), and the case was transferred to this court. (Docket No. 32).

## I. BACKGROUND OF THE CASE

The plaintiff, Tyrone Davis Smith, is a Wisconsin inmate who was incarcerated at the Milwaukee Secure Detention Facility (MSDF) at all times relevant. The defendants, who are employees at MSDF, are: John Husz, Warden; Troy Hermans, Unit Manager; Ms. Basten, Business Office Supervisor; Mr. Koremenos, Business Office Specialist; Officer Handy, Mailroom Officer; Officer Cook, Mailroom Officer; Sergeant Tremins/Tremaine; Sergeant Wiggins; and Officer Khan/Kahn. Defendant Rick Raemisch is Secretary of the Wisconsin Department of Corrections (DOC).

The plaintiff filed the original complaint alleging that MSDF prison staff negligently mishandled and lost a petition for writ of certiorari he attempted to mail, denied him notary services, and denied him access to the courts. The plaintiff subsequently filed three motions to amend the complaint. Upon screening the original complaint pursuant to 28 U.S.C. § 1915A, the court found that it did not state access to the courts or negligence claims. However, on December 19, 2007, the court determined that the plaintiff's third motion to amend stated a potential retaliation claim and therefore directed the plaintiff to file an amended complaint with regard to this claim. (Order, Docket No. 10).

The amended complaint, filed January 22, 2008, (Docket No. 13), is the operative complaint in this action. The plaintiff alleges that the defendants retaliated against him and conspired to retaliate against him for exercising his First Amendment right to file a writ of certiorari challenging revocation of his criminal case. According to the plaintiff, the defendants retaliated and conspired

2

to retaliate as follows: (1) defendant Hermans refused to notarize a document pertaining to his writ of certiorari; (2) defendants Basten, Koremenos, Cook, and Handy neglected to mail his writ of certiorari to the court and intentionally held it for approximately eight months; (3) defendants Wiggins, Tremins, and Khan failed to perform their duties in assuring he was signed up for use of the law library; and (4) defendants Husz and Raemisch failed to adequately address the matters at hand by giving sufficient redress and for personally denying his complaints and appeals.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. The existence of a factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. Id. at 248; Santiago v. Lane, 894 F.2d 218, 221 (7th Cir. 1990). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine need for trial and summary judgment is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

3

The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex, 477 U.S. at 323. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. Id. at 322-23. When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial"). If a plaintiff merely repeats under oath the same general allegations contained in the complaint, this is not enough to convert claims into evidence sufficient to maintain a claim at the summary judgment stage. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997).

To defeat summary judgment, the non-moving party must engage in more than a mere swearing match. Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). While the resolution of factual disputes, the sufficiency of evidence developed from the facts, and the relative credibility of the parties are matters generally left to a jury or fact-finder at trial, summary judgment is nonetheless appropriate where the evidence is so one-sided that one party must prevail as a matter of law. Anderson, 477 U.S. at 251-52. If a party's allegations are based on mere conjecture, and are merely colorable or conclusory, and if the evidence supporting those allegations is not significantly

4

probative as to material facts at issue, denial of a motion for summary judgment is not justified. Id. at 249-50.

The fact that both parties have moved for summary judgment, and thus both parties are arguing that there is no genuine issue of fact, does not empower the court to enter judgment as it sees fit. See 10A Charles Alan Wright, et al., § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Each party, as a movant for summary judgment, bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. See Wright et al. supra, § 2720 at 335.

### III. FACTS

**A. Plaintiff's Statement of Facts**

The following summary of plaintiff's factual allegations is taken from the plaintiff's "Undisputed Facts" which is located in his brief filed in support of his motion for summary judgment. (Docket No. 42).

On March 16, 2007, the plaintiff placed his petition for writ of certiorari in the mail at MSDF to be routed to the Business Office so that a six-month certified trust account statement could be included, and then to be routed to the mail room for mailing to the Milwaukee County Circuit Court. On April 4, 2007, the plaintiff received correspondence from the deputy clerk of Milwaukee County Circuit Court stating that he had received documents pertaining to his petition, but not the petition

itself. On April 16, 2007, Inmate Complaint Examiner Kelly A. Salinas determined that the plaintiff's petition "was never sent out and that it was lost at some point between the Business Office and mailroom" and that "it is more likely than not that the paperwork was lost while under staff's control[.]" (Affidavit of Tyrone Davis Smith [Smith Aff.] ¶ 6; Am. Compl. Ex. 3p2-3p3.) After discovering that his original petition was lost and never made its way to the courts, the plaintiff had to quickly use his own personal file copy to send to the court.

Defendant Hermans refused to notarize the plaintiff's "must-be-notarized" document that was an essential part of his petition. On March 26, 2007, the Milwaukee County Circuit Court deputy clerk returned the document stating that before the petition could be filed, it had to be signed before a notary public. After he was denied notary services and after his petition was lost, the plaintiff filed a motion for extension of time to file his petition. The document for which he requested notary service was a document that would assist in establishing and completing his status of indigency to be filed along with his Petition. The MSDF Inmate Handbook and DAI Administrative Directive 35.1 allow notary services for documents that establish indigency for a prisoner filing a petition for writ of certiorari.

While preparing his petition and related documents, the plaintiff used the MSDF law library. On March 12, 2007, he requested to be signed up to use the law library the following day. On March 13, 2007, defendant Sgt. Wiggins told the plaintiff that he was not on the sign-up list for law library use. The plaintiff explained that there was error on the part of defendant Sgt. Tremaine for failing to sign the plaintiff up and that he needed to use the law library that day so that he could finish preparing his petition and send it to court on time. Defendant Wiggins said that the plaintiff could not use the law library because he was not signed up.

On November 28, 2007, the plaintiff learned that his original petition was not lost by MSDF but rather that it was "held/delayed" from March 2007 until November 2007. This was discovered through a letter from a deputy clerk of Milwaukee County Circuit Court, dated November 20, 2007, that was issued to the plaintiff by Officer Healy at the Green Bay Correctional Institution after the plaintiff filed a civil rights action in September 2007.

**B. Defendants' Statement of Facts**

Defendants submitted their "Proposed Findings of Fact" in support of their motion for summary judgment. (Docket No. 46). The court will summarize the defendants' allegations.

1. Allegations regarding denial of notary services

On or about March 16, 2007, the plaintiff asked defendant Hermans to notarize a document for him. The document appeared to be an authorization spelling out how the Business Office was supposed to take funds from the plaintiff's inmate account, once it reached a certain balance, and send those funds to a recipient as payment. Inmate funds and disbursement of the same are governed by the Wisconsin Administrative Code §§ DOC 309.45, 309.48 and 309.49. Each institution shall set forth in writing a procedure whereby inmates may request the disbursement of funds. Wis. Admin. Code § DOC 309.48. Upon incarceration at MSDF, all inmates receive a copy of the MSDF Inmate Handbook. The plaintiff's document did not follow the MSDF inmate account disbursement request procedure as outlined on page 21 of the Handbook. Hermans explained to him that he could verify the fund disbursement process with the Business Office to which the plaintiff expressed dissatisfaction. Hermans explained that, alternatively, the plaintiff could submit a standard Disbursement Request Form to the Business Office. The plaintiff dismissed this idea by saying,

7

"Never mind." Based upon the plaintiff's response, Hermans was under the impression that he was withdrawing his request for notary services at that time.

Administrative Directive 35.1, which governs notary services to inmates, includes a list of documents for which inmates may request notarization. The document that the plaintiff provided to Hermans was not on this list. As stated in Administrative Directive 35.1, as well as the MSDF Inmate Handbook, for any items not on the list, the inmate must provide written verification that the item must be notarized. The verification must come from an outside, recognized source, and will be presented to and reviewed by staff prior to any authorization. The plaintiff did not provide Hermans with such verification.

On March 20, 2007, the plaintiff filed Offender Complaint MSDF-2007-8506, in which he complained that Hermans read his legal document and refused to notarize it for him. After investigating the offender complaint, the Inmate Complaint Examiner (ICE) recommended dismissal of the same on March 21, 2007. The plaintiff appealed the ICE's decision to defendant Husz, who affirmed the decision. On March 28, 2007, the plaintiff appealed the recommendation for dismissal to the Corrections Complaint Examiner (CCE), who, based upon the ICE's report, as well as the fact that the document did not meet the list of items requiring notarization, recommended the appeal be dismissed. Raemisch accepted CCE Tom Gozinske's recommendation and dismissed Offender Complaint MSDF-2007-8506 on March 28, 2007.

Hermans had no personal knowledge with regard to any legal documents the plaintiff may have been preparing, nor did he have information about any legal actions the plaintiff may have had pending. At all times, Hermans followed DOC guidelines, policies, and procedures.

8

2. Allegations regarding failure to mail writ of certiorari

On April 9, 2007, the plaintiff filed Offender Complaint DCI-2007-10358, alleging that a writ of certiorari he attempted to mail was not received by the court. The ICE contacted defendant Basten as part of her investigation. Basten indicated that inmates must forward all documents to the Business Office which require a certified Trust Account Statement, and which are directed to the court. Although Basten does not recall this request from the plaintiff, the standard procedure is to enclose the certified Trust Account Statement in the self-addressed, stamped envelope provided by the inmate. The envelope is then forwarded to the mailroom and additional postage is added, if necessary. Records showed that defendant Koremenos made a copy of the plaintiff's statement on March 17, 2007, and posted a $0.15 charge to his account on March 20, 2007. While Koremenos does not personally recall the plaintiff's Disbursement Request, he explained to the ICE that his normal practice in processing these requests is to attach the Trust Account Statement to any other papers and envelope, and route it to the mailroom. He tags those documents with a note indicating that postage needs to be applied, so as to alert mailroom staff. Once the mailings have postage affixed, Koremenos receives a form back from the mailroom so that postage can be charged to the inmate's account, and then mailroom staff mails the correspondence. The computer program used for tracking account deductions does not show that postage was ever charged to the plaintiff's account after February 14, 2007. Mailroom staff were contacted, but do not recall seeing this specific piece of mail.

Once her investigation was completed, the ICE affirmed the complaint with modification on April 16, 2007, noting that the plaintiff's mail was likely lost between the Business Office and Mailroom. She forwarded a copy of her report to Basten, and to the Mailroom Supervisor. On April

9

18, 2007, defendant Husz, as the appropriate Reviewing Authority, affirmed the decision of the ICE. On April 23, 2007, the plaintiff appealed the decision to the CCE, and on that same date, the CCE dismissed the complaint, acknowledging that the ICE's report was reasonable and appropriately addressed the issue. Raemisch accepted CCE Gozinske's recommendation and dismissed Offender Complaint DCI-2007-10358 May 9, 2007.

Basten did not normally handle requests for Certified Trust Account Statements. Rather, those requests were handled by Business Office staff, whom she supervised. Basten did not personally process the plaintiff's request and she did not intentionally delay or hold the plaintiff's Trust Account Statement. At all times, Basten followed DOC guidelines, policies, and procedures.

Defendants Cook and Handy are aware that the plaintiff filed Offender Complaint DCI-2007-10358. All inmate mail is processed in accordance with § DOC 309.04, Wis. Admin. Code, the Division of Adult Institutions Policy and Procedure Number 309.04.01 entitled "Inmate Mail," and pages 17 – 19 of the MSDF Inmate Handbook. On any given day, the MSDF mailroom processes hundreds of pieces of mail. Due to the large volume of mail coming in to the institution for inmates and staff, mistakes sometimes do happen. While Cook and Handy do not personally recall the plaintiff's Disbursement Request, their normal practice in processing this type of request, once the correspondence is received, is to weigh it and affix the proper postage. They then include the amount that should be deducted from the inmate's account for postage on the Disbursement Request form, and forward that form to the Business Office. Finally, they mail the correspondence to the intended recipient. A copy of the Disbursement Request form is sent back to the mailroom, which is then forwarded to the inmate in that day's mail. All disbursement transactions are keyed in and recorded electronically in the Wisconsin Inmate Trust System. Pursuant to § DOC 309.04(4)(e),

10

Wis. Admin. Code, if once processed, mail cannot or will not be sent, a record of any mail not delivered is kept by the Security Director. At that time, a Notice of Non-Delivery of Mail form is typed up and sent to the inmate. There is no record that the plaintiff received such a notice. Cook and Handy have no personal knowledge as to why the plaintiff's Certified Trust Account Statement was not initially mailed to the court. Mailroom staff would not intentionally hold or lose mail to be sent out. Cook and Handy had no personal knowledge with regard to any legal documents the plaintiff may have been preparing, nor did they have information about any legal actions he may have had pending. They followed DOC guidelines, policies, and procedures at all times.

3. Allegations regarding access to the law library

On March 27, 2007, the plaintiff filed Offender Complaint DCI-2007-9117, alleging that he and another inmate requested that Officer Kahn sign them up for law library on March 12, 2007, and that defendant Kahn directed them to tell Tremaine they wanted to sign up. In his complaint, the plaintiff claims that Tremaine verbalized to him that he had signed names in the log for law library use on March 13, 2007 at 9:15 a.m. The plaintiff claims that upon telling defendant Wiggins that he was signed up for law library on March 13, 2007, she indicated that she did not see his name in the log.

On March 27, 2007, the plaintiff's offender complaint was rejected on the grounds that he had been transferred to another institution, and therefore, his complaint was moot. The plaintiff appealed the rejection to Warden Husz, who affirmed the decision of the ICE on March 30, 2007.

Pursuant to the first shift staff schedule for Monday March 12, 2007, Tremaine was not working in the plaintiff's housing unit on that date but rather worked as Lobby Sergeant from 9:00 a.m. to 5:00 p.m. Tremaine had no personal involvement with regard to plaintiff's request to use the

11

law library on March 12, 2007. Tremaine had no personal knowledge with regard to any legal documents the plaintiff may have been preparing, nor did he have information about any legal actions the plaintiff may have had pending.

The plaintiff alleges that on March 13, 2007, defendant Wiggins denied him access to the law library because he was not signed up on that day. On the day the inmate is scheduled to use the law library, the Unit Sergeant verifies all the names of the inmates who signed up in advance. If the inmate's name and scheduled time does not appear on the sign-up sheet for that day, he is not allowed to utilize the law library. Should that happen, the inmate can be signed up for the following day. Wiggins does not personally recall if the plaintiff requested to be signed up on the following day, nor does she recall if she was the one to sign him up. Wiggins had no personal knowledge with regard to any legal documents the plaintiff may have been preparing, nor did she have information about any legal actions he may have had pending.

## IV. ANALYSIS

In his motion for summary judgment, the plaintiff contends that the defendants' actions violated his right of access to the courts. He asserts that the defendants violated his First and Fourteenth Amendment rights "to have (immediate) access to courts, by their holding/delaying his mail and refusing him notary services." (Pl.'s Br. at 1, 7-8.) However, the plaintiff was only permitted to proceed on his retaliation claim and not on an access to the courts claim. (Order, Docket No. 10). As such, the amended complaint (Docket No. 13) does not properly allege an access to courts claim because it fails to set forth an alleged injury. Rather, the plaintiff alleges that he was able to file a motion for extension of time so that his writ would be reviewed by the court. An inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially

12

meritorious challenge to his conviction, sentence, or conditions of confinement. Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009); Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009); Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). The prisoner, thus, must spell out in his complaint the connection between the alleged denial of access to the courts and the actual, nonfrivolous injury. Christopher v. Harbury, 536 U.S. 403, 414 (2002); Ortiz, 561 F.3d at 671. Since the plaintiff's motion for summary judgment focuses on a claim upon which he is not proceeding, the motion will be denied.

In their motion for summary judgment, the defendants contend that, (1) Raemisch, Husz, Tremaine, and Basten should be dismissed for lack of personal involvement; (2) the plaintiff has failed to establish that the defendants acted with retaliatory motive; and (3) the plaintiff fails to state a claim for conspiracy. The plaintiff contends that there are genuine issues of material fact precluding summary judgment in this action.

1. Personal Involvement

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since a section 1983 action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995)). To be personally

13

responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Johnson, 444 F.3d at 583-84 (quotation omitted).

Prison administrators are liable under § 1983 for failing to protect those in their charge against violence only if they are deliberately indifferent, which means they knew of and disregarded an excessive risk to inmate safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Pierson v. Hartley, 391 F.3d 898, 901 (7th Cir. 2004). There is no respondeat superior liability under § 1983; a plaintiff must demonstrate that supervisory officials are personally responsible for alleged deprivations. See Monell v. Dep't of Social Serv's, 436 U.S. 658, 694 (1978); Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1995). Supervisory officials may be personally responsible for the constitutional torts of their subordinates only if the official knows of and facilitates, approves, condones, or turns a blind eye to the conduct. See Chavez v. Cady, 207 F.3d 901, 906 (7th Cir. 2000); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

"Only persons who cause or participate in the violations are responsible. See Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996). Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-610 (7th Cir. 2007).

In this case, it is undisputed that defendant Raemisch accepted the recommendations of the CCE and dismissed the plaintiff's Offender Complaints MSDF-2007-8506 and DCI-2007-10358. It is also undisputed that Raemisch's involvement in the prison grievance process was his only role

14

relevant to this case and that he was not personally involved in any act or decision relating to any of the complaint allegations. Thus, Raemisch will be dismissed for lack of personal involvement. See id. MSDF Warden defendant Husz's involvement in the complaint allegations is also limited to the inmate grievance process. Specifically, he reviewed and accepted the ICE's recommendation to dismiss MSDF-2007-8506 and DCI-2007-9117. Defendant Husz had no personal involvement with regard to any act or decision relating to any of the complaint allegations. Moreover, since there is not supervisory liability under § 1983, Husz is not liable based on his position as warden. See Antonelli, 81 F.3d at 1428. Accordingly, Husz will also be dismissed for lack of personal involvement.

The defendants contend that defendant Basten should also be dismissed for lack of personal involvement. According to the plaintiff, after his certified trust account statement was enclosed in an envelope, Basten was personally responsible for ensuring it was sent to the mail room if her subordinates failed to do so. It is undisputed that as Financial Program Supervisor, Basten did not normally handle trust account statement requests from inmates, rather such requests were handled by business office staff that she supervised. It is also undisputed that Basten did not personally process the plaintiff's request. As there is no respondeat superior liability under § 1983, see id., Basten will be dismissed for lack of personal involvement.

Finally, the defendants contend that defendant Tremaine should be dismissed because he was not present in the law library on March 12, 2007, the day the plaintiff claims that Tremaine failed to sign him up to use the library. Tremaine avers that on March 12, 2007, he was not present on the plaintiff's housing unit but rather was worked as the Lobby Sergeant from 9:00 a.m. to 5:00 p.m., and he submits a first shift staff schedule from that day which shows that he worked as Lobby

Sergeant. (Affidavit of David Tremaine ¶ 12, Ex. 1006, Docket No. 48). However, in a motion to supplement, the plaintiff points to Defendants' Response to Plaintiff's First Set of Interrogatories to Defendants. Interrogatory 13 asks in relevant part whether Tremaine was working first shift on March 12, 2007, on 7th Floor, Pod-D, and he responds: "I (Tremaine) worked at the MSDF on March 12, 2007 on the 7th Floor, Pod-D." (Docket No. 62). The defendants did not file a reply to the plaintiff's motion so there is no explanation for this discrepancy. Of course, since the court did not act on the plaintiff's motion to supplement with responses to written interrogatories, the defendants were not obligated to respond. The court will now grant the plaintiff's motion to supplement. Further, due to the apparent dispute of facts as to where Tremaine was working on March 12, 2007, the court will not dismiss defendant Tremaine for lack of personal involvement. Rather, the court will address the plaintiff's retaliation claim as to defendant Tremaine on the merits.

2. Retaliation

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right may be liable to the prisoner for damages. Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996). Otherwise lawful action "taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000). Although it is easy to state a retaliation claim, Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) (petitioner need not allege a chronology of events from which retaliation could be plausibly inferred), the burden of proving the claim is heavy, Babcock, 102 F.3d at 275.

To prevail on a retaliation claim, the plaintiff must prove that his constitutionally-protected conduct was a substantial or motivating factor in a defendant's actions. Hasan v. United States Dep't of Labor, 400 F.3d 1001, 1005-06 (7th Cir. 2005); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,

429 U.S. 274, 287 (1977); Spiegla v. Hull, 371 F.3d 928, 941-42 (7th Cir. 2004). "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of – in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." Hasan, 400 F.3d at 1006. "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant . . . to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." Spiegla, 371 F.3d at 943.

The defendants contend that the plaintiff has failed to provide sufficient evidence that his filing a writ of certiorari was a motivating factor in the defendants' actions. First, the defendants argue that defendant Hermans would have followed the same course of action of refusing to notarize the document even if the plaintiff had not been filing a certiorari action. It is undisputed that the document that the document provided by the plaintiff did not follow the MSDF inmate account disbursement request procedure and that Hermans explained to the plaintiff that he could verify the fund disbursement process with the Business Office to which the plaintiff expressed dissatisfaction. Hermans also explained to the plaintiff that he could submit a standard Disbursement Request Form to the Business Office in order to cover any financial obligations, but the plaintiff dismissed this idea. Moreover, it is undisputed that Hermans had no personal knowledge with respect to any legal documents the plaintiff was preparing, nor did he have information about any legal actions the plaintiff may have been preparing.

The defendants contend that defendants Koremenos, Cook, and Handy did not retaliate against the plaintiff. The undisputed facts reveal that the plaintiff's mail was likely lost between the Business Office and Mailroom and that, at most, this was an accident. It is also undisputed that these

17

defendants had no knowledge about any legal documents the plaintiff may have been preparing, nor did they have any information about any legal actions the plaintiff may have had pending. Thus, based on their lack of knowledge, their actions could not be construed as retaliating against the plaintiff for exercising his right to file a writ.

The defendants also contend that Khan and Wiggins should be dismissed because they did not act with retaliatory motive. It is undisputed that the plaintiff was not denied access to the law library because of his attempt to file a writ of certiorari. It is undisputed that Wiggins and Khan followed standard procedure regarding the plaintiff's request to use the law library and therefore would have taken the same actions regardless of whether he was filing a writ. In accordance with procedure, the plaintiff would have been allowed to use the law library as soon as possible if he could not get in on a particular day. It is also undisputed that defendants Tremaine and Wiggins had no personal knowledge with regard to legal documents the plaintiff had pending at the time or that he was preparing.

The plaintiff may establish improper motive by pointing to evidence suggesting a retaliatory motive, such as suspicious timing or statements by the defendant suggesting that he as bothered by the protected conduct. See Mullin v. Gettinger, 450 F.3d 280, 285 (7th Cir. 2006); Culver v. Gorman & Co., 416 F.3d 540, 545-50 (7th Cir. 2005). However, "[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000).

In this case, the plaintiff has not established that any defendant acted with an improper motive so as to support a retaliation claim. "It is well-settled that conclusory allegations . . . without

18

support in the record, do not create a triable issue of fact." Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998). Accordingly, the defendants' motion for summary judgment as to the plaintiff's retaliation claim will be granted.

3. Conspiracy

The plaintiff's conspiracy claim remains, but now with no underlying substantive claims. Conspiracy is not an independent basis of liability in § 1983 actions. See Walker v. Thompson, 288 F.3d 1005, 1008 (7th Cir. 2002); see also Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000) (holding that "there is no constitutional violation in conspiring to cover-up an action which does not by itself violate the Constitution").

## IV. ADDITIONAL MATTER

On June 30, 2009, the plaintiff filed a motion to consolidate this case with another case he has pending in this district. (Docket No. 70). Due to the dismissal of this action, his motion is now moot.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for summary judgment (Docket No. 41) is **denied**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket No. 44) is **denied as moot**.

**IT IS FURTHER ORDERED** that the defendants' amended motion for summary judgment (Docket No. 59) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's motion in opposition of defendants' cross-summary judgment motion (Docket No. 61) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to supplement (Docket No. 62) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to consolidate cases (Docket No. 70) is **denied as moot**.

The clerk shall enter judgment dismissing the complaint against all defendants and this action.

Dated at Milwaukee, Wisconsin this 14th day of August, 2009.

BY THE COURT

s/AARON E. GOODSTEIN
United States Magistrate Judge